IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN TURNER, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 20-4502 |
| | : | |
| CITY OF PHILADELPHIA; | : | |
| Defendant. | : | |

## O R D E R

Plaintiff Bryan Turner alleges that his former employer, Defendant City of Philadelphia, engaged in unlawful discriminatory and retaliatory acts in violation of Title VII, Section 1983, the Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance. The City has moved to dismiss contending, *inter alia*, that Plaintiff has not adequately pled a basis for liability. For the following reasons, I will deny the Motion.

## I.   PROCEDURAL HISTORY

On April 7, 2020, Plaintiff filed a five-Count Complaint, asserting claims against the City for hostile work environment and race discrimination in violation of Title VII (Count I); retaliation in violation of Title VII (Count II); discrimination, retaliation and deprivation of First Amendment rights in violation of Section 1983 (Count III); discrimination and retaliation in violation of the PHRA (Count IV); and discrimination and retaliation in violation of the PFPO (Count V). (Doc. No. 1.) The City moved to dismiss all counts. (Doc. No. 3.) The matter is fully briefed. (Doc. Nos. 3-5.)

## II.   LEGAL STANDARDS

I must conduct a two-part analysis. Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, I accept Plaintiff's factual allegations, and disregard legal conclusions or mere recitations of elements. Id. I then determine whether the facts alleged make out a "plausible"

claim for relief.  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, the burden is on Defendants to show that Plaintiff has failed to allege facts sufficiently detailed to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  I may dismiss claims with prejudice if amendment would be futile. Phillips, 515 F.3d at 228.

### III.    FACTUAL ALLEGATIONS

Plaintiff, who is black, was employed as a police officer with the Philadelphia Police Department between July 25, 2011 and December 7, 2018 when he was terminated.  (Doc. No. 1 at ¶¶ 2, 9.)  In 2016, Plaintiff initiated a lawsuit alleging retaliation by his commanding officer, Captain Daniel O'Connor, in violation of Title VII and PHRA.  (Id. at ¶ 10.)  The Parties' settled that lawsuit on August 28, 2017. (Id. at ¶ 12.)

Plaintiff was outspoken on social media regarding his disapproval of the PPD's failure to terminate and arrest Officer Pownall who shot an unarmed African American male in the back as he fled from the Police.  (Id. at ¶ 13.)  On July 31, 2017, the Internal Affairs Bureau (IAB) reprimanded Plaintiff for these social media posts.  (Id.)

Additionally, Plaintiff posted a photo on social media demonstrating his support for the Black Lives Matter movement on August 18, 2017 and publicly criticized Fraternal Order of Police President John McNesby's anti-BLM statements.  (Id. at ¶¶ 14-15.)  On January 8, 2018, the IAB took disciplinary action against him for criticizing Officer Pownall and his statements regarding the FOP because Plaintiff's statements "insinuated that the [PPD] is a racist organization" and that Plaintiff "has little or no regard for the Department and [his] position in it." (Id. at ¶¶ 20-21.)

2

In August and September 2017, Plaintiff's co-workers began making hostile comments. (Id. at ¶ 17.)  Unnamed co-workers republished Plaintiff's social media posts and falsely portrayed them as being anti-police.  (Id.)  A sergeant asked for Plaintiff's badge number and district assignment "so that he does not accidently contribute to his fund when he gets killed."  (Id.)  An Officer "wrote that he hopes Plaintiff 'gets caught in crossfire.'"  (Id.)  Although Plaintiff reported these comments to his commanding officer, Captain O'Connor, no PPD action was taken. (Id. at ¶¶ 17-18.)

On September 1, 2017 Sergeant David Armstrong, a patrol supervisor, notified Captain O'Connor that Plaintiff falsified a Preliminary Arraignment Report System (PARS) report, stating that a second arresting officer, Melissa Butcher, would need to testify (which would necessitate overtime pay), and incorrectly stating the point during the arrest when narcotics packets were recovered. (Id. at ¶¶ 22-25.)  Sergeant Armstrong also accused Plaintiff of taking improper restroom and meal breaks. (Id. at ¶¶ 22-25.)

On September 4, 2017—one week after the 2016 lawsuit settled—Captain O'Connor referred plaintiff to the IAB based on Sergeant Armstrong's allegations. (Id. at ¶ 22.)  The PPD planned to reclaim Plaintiffs' service weapon and place him on restricted duty at the "DPR," a "non-desirable assignment" that does not provide overtime or ability to earn commendations toward promotion.  (Id. at ¶¶ 26-27.)

Also on September 4, 2017, before Plaintiff was notified of his reassignment to restricted duty, he received the following social media messages from retired Officer John Herbert:

> Has the Black Lives Matter food and medicine envoy reached Houston yet. Just curious.
> How about I meet you at your district one day end the end of your tour. You see son, I have quite the reputation in the PPD. Ask your CO [Commanding Officer] and some of the old heads…Even this OLD F**** retired p**** will permanently cripple you…I a very bad man there son and I could really use a good a** kicking

> from a skinny little p**** like you. You probably weigh as much as Michael
> Jackson right?
>
> Yo Urkle, you're in DPR you f******* p****. Now I have your address too.
> Why don't you cry to EEOC you f****** butch a** suck your mommy's t*t
> f**g**. The whole PPD is on to you now. You looking over your shoulder???? It's
> just a matter of time.
>
> You are so f*****. You have no idea what's coming. Watch you back little
> f**g**.

(<u>Id.</u> at ¶ 29; redactions and misspellings as in Complaint.)  Plaintiff filed an incident report regarding Herbert's message and gave a copy to Captain O'Connor who refused to investigate the threats or who in the PPD leaked to Herbert the information regarding Plaintiff's impending reassignment to DPR.  (<u>Id.</u> at ¶¶ 17, 19.)

On September 5, 2017, after Captain O'Connor reclaimed Plaintiff's service firearm, Plaintiff was transferred where he remained for a year during the IAB investigation.  (<u>Id.</u> at ¶ 30.) IAB investigator Sergeant Quiana Richardson reviewed two years of Plaintiff's PARS reports and found only one other error.  (<u>Id.</u> at ¶ 31.)  She both failed to interview witnesses who could have cast doubt on the suggestion that Plaintiff had falsified PARS reports and ignored the PPD's practice of allowing Officers to correct clerical mistakes.  (<u>Id.</u> at ¶¶ 33, 36-39, 42-45.)  Moreover, in a similar situation, Officer D.S. (who is white) incorrectly listed a second arresting officer on a PARS report, but no IAB investigation ensued.  (<u>Id.</u> at ¶ 41.)

The IAB escalated the investigation of Plaintiff's falsification of PARS reports to the Philadelphia District Attorney's Charging Unit.  (<u>Id.</u> at ¶ 38.)  In June 2018, a grand jury recommended criminal charges.  (<u>Id.</u> at ¶ 86.)  On August 29, 2018 the DA criminally charged Plaintiff with: Attempted Theft by Deception, Obstruction of Justice, Unsworn Falsification to Authorities, and Official Oppression.  (<u>Id.</u> at ¶ 945.)  The next day PPD suspended Plaintiff without pay with the intent to dismiss.  (<u>Id.</u> at ¶ 95.)  The PPD terminated his employment on December 7, 2018.  (<u>Id.</u> at ¶ 101.)  Although a jury found Plaintiff not guilty of all charges in June 2019, the

City refused to reinstate Plaintiff.  (Id. at ¶ 100.)

## IV.   DISCUSSION

Plaintiff makes four types of claims: (1) Hostile Work Environment under Title VII, the PHRA and the PFPO; (2) Race Discrimination under Title VII, PHRA and PFPO; (3) Retaliation under Title VII; and (4) violation of Constitutional Rights under § 1983.  (Id. at ¶¶ 109-133.)  42 U.S.C. §§ 2000e-2; 2000e-3; 42 U.S.C. § 1983; 43 P.S. § 951; Phila. Code § 9-1101.  The standards for liability under the PHRA and PFPO are identical to those under Title VII.  See Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (Fed. Cir. 1995); Frost v. City of Philadelphia, 839 F. App'x 752, 755 (3d Cir. 2021).

### A.  Hostile Work Environment

Plaintiff has adequately pled this claim under Title VII (Count 1), the PHRA (Count 4), and the PFPO (Count 5).  (Doc. No. 1.)  To make out a *prima facie* claim of a hostile work environment, Plaintiff must allege: (1) that he "suffered intentional discrimination because of his/her [race]," (2) that the discrimination "was severe or pervasive," (3) that the discrimination "detrimentally affected the plaintiff," (4) that the discrimination "would detrimentally affect a reasonable person in like circumstances," and (5) "the existence of *respondeat superior* liability." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).  The City argues that Plaintiff has insufficiently pled facts to establish (1) intentional discrimination, (2) that any discrimination was severe or pervasive, and (3) existence of *respondeat superior* liability. (Doc. No. 3 at 8-10.)  I disagree.

The City argues that Plaintiff has not pled facts demonstrating intentional discrimination *because of* Plaintiff's race.  (Id. at 8.)  The City urges that Plaintiff's allegations center around his social media posts and statements criticizing the PPD and FOP, which have nothing to do with

Plaintiff's race.  (Doc. No. 3.)  Plaintiff responds with his allegations that Herbert explicitly called Plaintiff "Urkle" which is a "derogatory term for a skinny, annoying African-American kid."  (Id. at 17; Doc. No. 1 at ¶ 29 n.9.)  Plaintiff also points to his allegations that Captain O'Connor and the IAB instituted an investigation regarding an error in a PARS report and subsequent criminal proceeding, but that a white officer was not investigated or reprimanded for having the same error in a PARS report.  (Doc. No. 4 at 13-14; Doc. No. 1 at ¶¶ 22, 41.) Taking the facts in the Complaint as true, it is plausible that Plaintiff suffered intentional discrimination because of his race.

There is no "talismanic expression[] which must be invoked as a condition-precedent" to finding that intentional discrimination because of a Plaintiff's race.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1083 (3d Cir. 1996).  Rather, it is "the intent of the speaker" that is determinative of "intentional discrimination."  Id.  Further, "racial discrimination need not be overt to create a hostile environment."  Bridges v. Scranton Sch. Dist., 644 F. App'x. 172, 179 (3d Cir. 2016) (citing Blunt v. Lower Merion Sch. Dist., 746 F.3d 247 (3d Cir. 2014)). Plaintiff instead "may establish a prima facie factual foundation of discrimination by drawing reasonable inferences from certain objective facts."  Id.

Here, the facts as alleged make out a plausible claim of intentional discrimination because of race. Again, Herbert called Plaintiff "Urkle," a derogatory name for a black person.  His message could be interpreted as "carry[ing] the distinct tone of racial motivations and implications."  Aman, 85 F.3d at 1083.  Moreover, although the IAB investigation is factually neutral, the PPD's different treatment of a white officer who made the same error supports a plausible claim that Plaintiff suffered adverse treatment because of his race.  See, e.g., Cardenas v. Massey, 269 F.3d 251, 260-61 (3d. Cir. 2001).

The City next argues that the instances of discrimination pled by Plaintiff are "neither

6

severe nor pervasive." (Doc. No. 3 at 9.) The City characterizes the conduct, even if offensive, as mere off-handed, isolated comments. (Id. at 10.) Plaintiff responds that the IAB investigation and criminal proceedings resulted not only in being placed on restricted duty, but in his termination. (Doc. No. 4 at 18-19; Doc. No. 1 at ¶ 9, 101-106.)

To establish that the alleged conduct was "severe or pervasive," a plaintiff must "show that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Brooks v. CBS Radio, Inc., 342 F. App'x 771, 776 (3d Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)). The "severe or pervasive" inquiry is an objective one. Id. In some circumstances a severe, isolated incident may be sufficient to state a hostile work environment claim. Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) (A "supervisor's single use of the 'n-word' [was] adequately 'severe'" to state a claim). I must nevertheless look at the totality of the circumstances, including whether the conduct is "physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Plaintiff has sufficiently pled that the complained-of conduct was severe or pervasive. First, Herbert's message was clearly threatening—he threatened to "permanently cripple" Plaintiff, that he had Plaintiff's address and that Plaintiff should be "looking over [his] shoulder . . . [i]t's just a matter of time." (Doc. No. 1 at ¶ 29.) Moreover, the IAB investigation "unreasonably interfere[d] with [Plaintiff's] work performance." Brooks, 342 F. App'x at 777. During the IAB investigation, Plaintiff was placed on restricted duty and was subsequently suspended without pay during the criminal prosecution and then terminated. (Doc. No. 1 at ¶¶ 30, 95, 101.) In view of

these allegations, which I must accept as true, the discriminatory conduct was severe or pervasive.

Finally, the City urges that Plaintiff failed to allege facts to show the existence of *respondeat superior* liability because there are no facts in the Complaint demonstrating that "anyone who supervised Plaintiff attributed to an actionable hostile work environment."  (Doc. No. 3 at 11.)  Yet Plaintiff has alleged that supervisors "perpetrated the foregoing acts of discrimination," and the PPD "knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  (Doc. No. 4 at 19.)  Taking these allegations as true *respondeat superior* liability is made out.

An employer "is strictly liable for a supervisor's actions" under Title VII so long as "'the supervisor's harassment culminates in a tangible employment action.'"   In re Tribune Media Co., 902 F.3d 384, 399 (3d Cir. 2018) (quoting Vance v. Ball State Univ., 570 U.S. 421, 424 (2013)). A tangible employment action is any action that results in a "significant change in employment status, such as hiring, firing, failing to promote, reassign[ing] with significantly different responsibilities, or a decision causing a significant change in benefits."  Id.  (alteration in original).

When the hostile work environment is created by coworkers rather than supervisors, the employer is liable only if "the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).  Although not addressed by the Third Circuit, other Circuits have held that "an employer is liable under Title VII for third parties creating a hostile work environment if the employer knew or should have known of the harassment and failed 'to take prompt remedial action reasonably calculated to end the harassment.'"  Freeman v. Dal-Tile Corp., 750 F.3d 413, 422-23 (4th Cir. 2014); see also Galdamez v. Potter, 415 F.3d 1015, 1022 (9th Cir. 2005); Dunn

v. Washington Cnty. Hosp., 429 F.3d 689, 691 (7th Cir. 2005); Watson v. Blue Circle, Inc., 324

F.3d 1252, 1259 (11th Cir. 2003); Turnbull v. Topeka State Hosp., 255 F.3d 1238, 1244 (10th Cir.

2001); Johnson-Harris v. AmQuip Cranes Rental, LLC, Civ. No. 14-767, 2015 WL 4113542 at *8

(E.D. Pa. July 8, 2015).

 Plaintiff's alleges that Captain O'Connor—Plaintiff's direct supervisor—referred Plaintiff

to the IAB, which conducted an investigation and referred the matter to the DA.  (Doc. No. 1 at ¶¶

22, 53.)  These actions resulted in Plaintiff's reassignment to restricted duty, unpaid suspension,

and termination.  (Id. at ¶¶ 30, 95, 101.)  Taking these facts as true, the supervisors' "harassment

culminate[ed] in a tangible employment action."  In re Tribune Media Co., 902 F.3d at 384.  If so,

*respondeat superior* liability is made out.

 Moreover, although Herbert is not a PPD employee, the Plaintiff alleges that PPD knew of,

condoned, and even contributed to Herbert's message but failed to take any action.  (Doc. No. 1 at

¶¶ 17, 19.)  Plaintiff alleges that "the PPD leaked to Mr. Herbert [information] from Plaintiff's

confidential personnel file."  (Id. at ¶ 17.)  Taking these facts as true, it is plausible that the PPD

contributed to and condoned Herbert's message.  Plaintiff also alleges that he filed an incident

report regarding Herbert's message and gave the messages to Captain O'Connor; but the PPD

failed to take any action.  (Id. at ¶ 19.)  Taking these facts as true, the PPD failed to investigate and

remedy Herbert's message after learning of it.  If so, *respondeat superior* liability is made out.

 Because Plaintiff has adequately pled that discrimination based on race that was severe or

pervasive and the existence of *respondeat superior,* I will thus deny the City's Motion to Dismiss

Plaintiff's hostile work environment claims.

 B.  Race Discrimination

 Plaintiff has adequately pled a race discrimination claim under Title VII (Count 1), the

PHRA (Count 4) and the PFPO (Count 5).  (Doc. No. 1.)  To make out a prima facie case of race discrimination, Plaintiff must allege that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subject to adverse employment action despite being qualified, and (4) his employer acted in circumstances raising an inference of discriminatory action.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  To raise an inference of discriminatory action, Plaintiff must plead facts showing "some causal nexus between his membership in a protected class" and the adverse employment action.  Sarullo, 352 F.3d at 798.  Plaintiff may establish the causal nexus by demonstrating that "the employer has treated more favorably similarly situated persons not within the protected class."  Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998).  "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'"  Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222-23 (3d Cir. 2009). At the pleading stage Plaintiff is not "required to establish a prima facie case."  Connelly v. Lane Constr. Corp, 809 F.3d 780, 791 (3d Cir. 2016).  Rather, he must only "plead facts that, construed in [his] favor, state a claim of discrimination that is 'plausible on its face.'"  Id. (quoting Iqbal, 556 U.S. at 678).

The City argues that Plaintiff has not set forth sufficient facts to establish that PPD's actions raised an inference of discrimination.  (Doc. No. 2 at 11-12.)  Plaintiff responds that a white officer made the same error on a PARS report but was not investigated.  (Doc. No. 4 at 13-14; Doc. No. 1 at ¶¶ 22, 41.) The City urges that his officer is not "similarly situated" because Plaintiff made two errors;  the white officer made only a single error.  (Doc. No. 2 at 11-12.)  Yet Plaintiff alleges that the IAB investigated him after he made an error in a single PARS report, but that the white officer was not investigated at all.  (Doc. No. 1 at ¶¶ 22-26.)  Moreover, the City confirmed in its Memorandum that it was only during the investigation that IAB determine that Plaintiff made

errors on two PARS reports.  (Doc. No. 3 at 12; Doc. No. 1 at ¶ 41.)

Based on Plaintiff's allegations, the PPD treated a similarly situated white officer more favorably than Plaintiff.  If so, Plaintiff has established a "causal nexus between his membership in a protected class" and the adverse employment action.  See Sarullo, 352 F.3d at 798.  I will thus deny the City's Motion to Dismiss Plaintiff's claims of race discrimination.

C.  Retaliation

Plaintiff has adequately pled a retaliation claim under Title VII (Count 2), the PHRA (Count 4), and the PFPO (Count 5).  (Doc. No. 1.)  Plaintiff must allege: "(1) that []he engaged in a protected employee activity; (2) that []he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there is a causal connection between the protected activity and the adverse action."  Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005).

The City argues that Plaintiff has not set forth sufficient facts to establish causal connection between the protected activity (the 2016 lawsuit) and his termination.  (Doc. No. 2 at 13.)  Plaintiff responds that Captain O'Connor initiated the IAB investigation only three days after the 2016 lawsuit settled.  (Doc. No. 4 at 28.)  A causal connection may be established by " temporal proximity between the employee's protected activity and the adverse employment action," through "circumstantial evidence of a 'pattern of antagonism' following the protected conduct" or by viewing "the proffered evidence . . . as a whole."  Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997).

Here, Plaintiff alleges that his patrol supervisor, Sergeant David Armstrong, made allegations that Plaintiff falsified the PARS report on September 1, 2017—three days after the 2016 lawsuit settled.  (Doc. No. 1 at ¶¶ 12, 22.)  Three days later, Captain O'Connor referred the

11

matter to the IAB.   (Id. at ¶ 22.)   Plaintiff alleges significant deficiencies throughout the investigation and that Captain O'Connor and the IAB failed to follow protocol.  (Id. at ¶¶ 31-53.) Taken together, the temporal relationship to the lawsuit settlement and the pattern of antagonism establish a plausible causal connection between the protected activity and the adverse action.  See Kachmar, 109 F.3d at 177.  I will thus deny the City's Motion to Dismiss Plaintiff's claims of retaliation.

      D.  Section 1983

Plaintiff has adequately pled that Defendant deprived him of his First Amendment Right to Freedom of Speech in violation of § 1983.  (Doc. No. 1.)  To establish liability under § 1983, Plaintiff must first "'identify the exact contours of the underlying right said to have been violated' in order to determine 'whether [he] has alleged a deprivation of a constitutional right at all.'" Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).  Next, Plaintiff must establish that the "state actor . . . can be held liable for that violation."  Id.  The City argues only that Plaintiff has not pled facts sufficient to establish that it can be held liable for deprivation of Plaintiff's First Amendment right of Freedom of Speech.  (Doc. No. 3 at  13-14.)  However, Plaintiff responds that Police Commissioner Ross knew the IAB reprimanded him for his public statements criticizing the PPD and FOP but took no action. (Doc. No. 1 at ¶ 21.)

A state actor is liable under § 1983 only for a constitutional violation that resulted from a municipal "custom" or "policy."  Monell v. Dpt. of Soc. Servs. of New York, 436 U.S. 658, 694-95 (1978).  A policy exists "'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" Natale, 318 F.3d at 584 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  A custom is an action  "'that has not been formally approved by an appropriate decisionmaker,' but that is 'so

widespread as to have the force of law.'"  Id.  (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).  For example, a custom exists if "'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

Plaintiff alleges the PPD violated his First Amendment rights when it disciplined him for his public speech regarding perceived racism within the PPD.   (Doc. No. 1 at ¶ 121; Doc. No. 4 at 35-36.)  Plaintiff further alleges that the IAB disciplined Plaintiff on January 8, 2018 for "insinuat[ing] that the Philadelphia Police Department is a racist organization" and because "Plaintiff has 'little or no regard for the Department and [his] position in it.'"  (Doc. No. 1 at ¶¶ 16.) Plaintiff alleges that he notified Police Commissioner Ross, the PPD policymaker, of the disciplinary action and formally requested a meeting.  (Id. at ¶ 21); see Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990) (The "Police Commissioner was a policymaker.")  The request "was stamped denied," however, and Commissioner Ross took no action.  (Doc. No. 1 at ¶ 21.)  Accepting these allegations, Commissioner Ross was aware that Plaintiff's rights were being violated and he failed to intervene.  It can thus be reasonably inferred that Commissioner Ross "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights."  Natale, 318 F.3d at 584; see also Johnson v. City of Philadelphia, Civ. No. 20-472, 2020 WL 3163201 at *5 (E.D. Pa. June 12, 2020) ("[A]t this [pleading] stage, the Court is satisfied that the allegations . . . permit the reasonable inference that Defendants . . . were aware that Plaintiffs' constitutional rights were being violated.").  I will thus

deny the City's Motion.

**V.     CONCLUSION**

In sum, Plaintiff's claims survive the City's Motion to Dismiss.   Accordingly, I will deny the Motion.

**\*\*\***

**AND NOW**, this 24th day of November, 2021, upon consideration of the City's Motion to Dismiss (Doc. No. 3), Plaintiff's Response in Opposition (Doc. No. 4), and the City's Reply (Doc. No. 5), it is hereby **ORDERED** that the City's Motion to Dismiss (Doc. No. 3) is **DENIED**.

**AND IT IS SO ORDERED.**

_/s/ Paul S. Diamond_
Paul S. Diamond, J.