IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA
_____

| | |
|---|---|
| BRYAN TURNER, | : |
| Philadelphia, PA 19144 | : |
|     Plaintiff | : CIVIL ACTION NO. 20-4502 |
| | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, | : |
| | : |
|     Defendant. | : |

_____

### **RULE 26(f) MEETING REPORT**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties submit the below report following a telephonic meeting:

### PLAINTIFF'S FACTS AND RELEVANT ISSUES

Plaintiff Bryan Turner (hereinafter, "Plaintiff"), a former police officer, contends that former employer, the Philadelphia Police Department (the "department"), a police agency of Defendant City of Philadelphia ("Defendant"), discriminated against him on the basis of race and retaliated for Plaintiff's then-recent settlement of a retaliation claim involving the same police district and commanding officer, Capt. Daniel O'Connor. The department further retaliated for Plaintiff's protected speech in opposition to a Caucasian officer's fatal shooting of an unarmed African-American suspect, which was widely viewed as racially motivated, and the department's handling of the shooting.[1] In support

---

[1] Said acts were in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"); 42 U.S.C. §1983 ("Section 1983"); the Pennsylvania Human Relations Act, 43 P.S. §951, *et seq*. ("PHRA"); and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1101, *et seq*. ("PFPO").

of these claims, Plaintiff states the following as set forth more fully in the Complaint. Defendant discriminated and retaliated against Plaintiff by:

(1) refusing to investigate threatening messages from other police officers, as well as messages from a person claiming to be a retired police officer who knew about the department's plan to investigate and reassign Plaintiff the next day before Plaintiff learned of the same. The department refused to take action to determine the seriousness of threats and source of leaked private personnel information;

(2) reprimanding and disciplining Plaintiff for the aforementioned protected speech. The department stated that Plaintiff "insinuate(d) that the Philadelphia Police Department is a racist organization" and Plaintiff has "little or no regard for the Department and [his] position in it.";

(3) subjecting Plaintiff to a year-long police investigation during which he was reassigned to less desirable work, without opportunities to earn overtime pay, commendations and promotion. Plaintiff was not informed of the nature of the investigation during that time;

(4) failing to preserve material evidence during the course of said investigation, like not saving computer forensic evidence, although Plaintiff was accused of falsifying a September 1, 2017 shared electronic report ("PARS") when allegedly listing a second arresting officer who was needed for court. Plaintiff patrolled on solo detail that shift, made a DUI arrest involving a single vehicle accident, and recovered narcotics while still on scene. The department did not interview personnel who had access to add to or edit the PARS, failing to rule out a different source of the alleged falsification or inadvertent error;

(5) not giving weight to substantial evidence in Plaintiff's favor, such as:

        (a)     a police investigator reviewed one or two years of Plaintiff's arrests and uncovered only one other concern, namely an August 5, 2017 PARS for a DUI arrest. Officers interviewed stated they had not previously known Plaintiff to falsify a report. Plaintiff had an upstanding background as a wounded military veteran, sergeant in the National Guard, and criminal justice major at Chestnut Hill College while a police officer;

        (b)     with both arrest files, the only evidence used against Plaintiff was the shared electronic PARS to which multiple personnel add and edit information, to produce a collaborative report for the District Attorney's Charging Unit (DACU). All such personnel are not identified on the face of the report. As examples, a detective field-tested and added the narcotics charge to the September 1, 2017 PARS. An accident investigation division (AID) officer contributed to the August 5, 2017 PARS. Neither personnel are identified on the report;

        (c)     both remaining arrest files identify Plaintiff as the only arresting officer. The PARS facts sections were not drafted consistent with police directive requiring that, with more than one arresting officer, the acts and observations attributable to each officer be clearly indicated;

        (d)     the witness fields auto-populated by typing the officer's payroll number; the name did not need to be entered manually. The six-digit payroll numbers for Plaintiff and the second officer were similar, with the first three digits being the same. A supervisor made the determination or final determination on if to list an officer as needed for court on the PARS. However, listing an officer as needed did not automatically generate a court notice. The DA's office decides who to call and issues court notices to police;

(e)   once Plaintiff submitted the PARS for review, he did not have further access to the same unless possibly a supervisor or other personnel with authority returned the report to him;

(f)   the patrol officer, Sgt. David Armstrong, discovered the alleged PARS falsification on September 1, 2017, although he was not assigned to review the report. The sergeant conferred with the captain, however neither alerted the operations room supervisor (ORS), Cpl. Louis Halegoua, who was assigned to review and approve the investigation report and PARS. He approved both, not seeing a discrepancy in the reports at that time. The corporal testified that had he known about the PARS error, then he would have allowed Plaintiff to correct the mistake, as was his practice to allow officers to correct inadvertent errors.

(g)   Plaintiff did not stand to derive any benefit from falsifying the PARS in the manner alleged.

(5)   referring Plaintiff for criminal prosecution, and misleading an investigating grand jury to support charging Plaintiff. The department misrepresented the PARS as Plaintiff's work although multiple personnel contributed to the same, as well as misrepresented the auto-populate feature and court notice process;

(6)   referring Plaintiff for said prosecution for additional reasons: for allegedly lying about whether Plaintiff recovered narcotics before Sgt. David Armstrong arrived on scene or afterward; and taking a break without waiting for another patrol unit to arrive to cover his assigned location. The arrest file and testimonies of Ofc. Erica Perez and Sgt. Armstrong support that the sergeant was at best mistaken, and was informed about the recovery of narcotics packaging, not narcotics. The suspect told Ofc. Perez that she had

just handed Plaintiff the narcotics, and the officer then saw him standing at the back of a patrol vehicle counting packets, consistent with having made the recent recovery. The same was after the sergeant arrived on scene. The sergeant testified to not seeing the narcotics when he arrived, but assumed they were in Plaintiff's pocket. Plaintiff had no motive to lie about the discrepancy in recovery times. Lastly, Lt. Marc Hayes testified that Plaintiff was allowed to go on break without waiting for another unit to take over patrol. Other units may be preoccupied with arrests, and covering for Plaintiff would in turn leave their location without a patrol unit. Plaintiff made the aforementioned DUI arrest while on the break he was disciplined for;

(7) refusing to follow police directive to cancel court notices sent in error, which notices were then used to support an additional criminal charge against Plaintiff;

(8) suspending then terminating Plaintiff following the charges; and

(9) holding Plaintiff in unpaid suspension for over three months, causing him to be unable to access retirement and pension funds needed to cover expenses.

## PLAINTIFF'S NEED FOR DISCOVERY

Plaintiff has criminal transcripts of some supervisors who testified, but requires discovery for this case. Plaintiff drafted requests to discover mainly: PARS operation and training, including the production of manuals; details on the auto-populate and edit features available in PARS; details about each personnel's contribution to the report; Capt. O'Connor's communications; Plaintiff's reports of threatening messages and leaked personnel information, and any action taken in response; and employees who committed PARS error related to an officer needed for court. Plaintiff anticipates sending a follow-up discovery request after reviewing responses.

After meeting with counsel for the City, Plaintiff is also requesting a transcript copy of the arbitration regarding whether to reinstate Plaintiff. An attorney for the Fraternal Order of Police represented Plaintiff, who said he tried to get a copy but was told that the City requested the stenographer. Counsel referenced the hearing at the Rule 26(f) meeting. Plaintiff will pay for the copy.

DEFENDANT'S FACTS AND RELEVANT ISSUES

The City's Police Department uses the electronic Preliminary Arraignment System (PARS) to track a defendant from arrest through referral to the District Attorney's Office for prosecution. An officer or detective electronically enters into the PARS report data such as the facts of an arrest and information on the arrestee, complainants, witnesses, and arresting officers. The PARS report also includes a section for identifying the police officers that will be needed in court. The charging unit of the District Attorney's Office first looks at the PARS report to get an overview of the case and determine the witnesses to be subpoenaed.

On September 1, 2017, then-24th District Officer Bryan Turner was assigned to a stationary beat on the 100 block of E. Somerset Street in the Kensington section of Philadelphia. Turner alleges that late that afternoon he called Sgt. David Armstrong to report that he was leaving his post to get lunch and that the post was being covered by Officers Melissa Butcher and Kelly Young. Turner claims that on his way to lunch, a pedestrian flagged him down to report an accident in the 3400 block of Gaul Street. Officer Turner investigated and found a car that had struck a pole and a driver who was under the influence of narcotics. He handcuffed the operator and placed her in his patrol vehicle. Sgt. Armstrong arrived and called for a female officer to report to the scene to

conduct a search of the female driver. Prior to Officer Erica Perez' arrival, the suspect removed 9 bags of heroin from her bra and surrendered them to Officer Turner. Officer Perez conducted a search of the operator. Finding no additional drugs, she transported the suspect to police headquarters.

Turner left the arrest scene to return to the 24th District and file reports of the arrest. He completed an incident report, a transport report, a property receipt, and a PARS report. On the first three reports, he identified himself as the arresting officer. On the PARS report, he listed Officer Melissa Butcher as the arresting officer and indicated that she was needed at the court hearing. In his narrative of the arrest, he indicated that the defendant turned over the narcotics after Officer Perez arrived on the scene. Sgt. Armstrong noted the discrepancies in the report and communicated his concerns to his Lieutenant.

The matter was referred to the Internal Affairs Unit, and Sgt. Quiana Richardson was assigned to investigate. Sgt. Richardson confirmed that Officer Butcher was not present for the arrest. She audited Officer Turner's arrest reports for 2017 and found that he had filed only one other PARS report for a DUI arrest. In that report dated August 5, 2017, Officer Turner listed Officer Butcher as the arresting officer needed for court. Sgt. Richardson confirmed that Officer Butcher was not working with Officer Turner that day and did not participate in the arrest. Sgt. Richardson found that Officer Turner had intentionally falsified the PARS reports for the arrests on August 5, 2017 and September 1, 2017. The IA investigation was referred to the District Attorney's Office, which presented the case to a Grand Jury. The Grand Jury returned several criminal charges

related to the alleged falsification. On August 30, 2018, Officer Turner was arrested. After a jury trial, he was found not guilty.

The same day of the arrest, the Department served on Officer Turner notice of a 30-day suspension with intent to dismiss. On September 10, 2018, Commissioner Richard Ross took direct action to terminate Officer Turner for two violations of the Department's disciplinary code – 1-§010-10 (knowingly and willfully making a false entry in any Department record or report) and 1-§026-10 (engaging in any action that constitutes the commission of a felony or misdemeanor which carries a potential sentence of more than (1) year). On September 27, 2018, Officer Turner's employment was terminated. Officer Turner timely grieved his termination, and after two days of hearings, an arbitrator denied the grievance and upheld the dismissal.

## INFORMAL DISCLOSURES

The parties will exchange informal disclosures by February 23, 2022.

## FORMAL DISCOVERY

The parties will disclose and produce discovery in accordance with the Federal Rules of Civil Procedure. All fact discovery will be commenced in time to be completed by June 30, 2022. All pre-trial motions except motions *in limine* are due by July 15, 2022.

## ELECTRONIC DISCOVERY

Production of electronically stored documents shall be either hardcopy or .pdf format, with coordination on the production of any large electronic files.

## EXPERT WITNESS DISCLOSURES

The parties shall disclose the identity of experts by June 30, 2022. Plaintiff's reports from retained experts shall be due by July 15, 2022. Defendant's reports from retained experts shall be due July 29, 2022.

## EARLY SETTLEMENT OR RESOLUTION

The parties are in ongoing settlement discussions.

## OTHER MATTERS

The parties do not have other matters to discuss with the Court at this time.

Respectfully submitted,

DATE: February 22, 2022              /s/ Melissa Freeman
                                     MELISSA FREEMAN, ESQ.
                                     1617 JFK Blvd., 20th Fl.
                                     Philadelphia, PA 19103
                                     Tel.: 215-868-7859
                                     *Attorney for Plaintiff*


                                     Nicole S. Morris
                                     Chief Deputy City Solicitor
                                     1515 Arch Street, 16th floor
                                     Philadelphia, PA 19102
                                     215-847-9019
                                     Nicole.morris@phila.gov
                                     Counsel for Defendants